# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

THE TORO COMPANY,
a Delaware corporation,

          Plaintiff,


v.                                        **MEMORANDUM OF LAW & ORDER**
                                          Civil File No. 06-3073 (MJD/AJB)


INGERSOLL-RAND COMPANY LIMITED,
a Bermuda company,
and CLARK EQUIPMENT COMPANY, a
Delaware corporation and a subsidiary of
Ingersoll-Rand Company Limited,

          Defendants.

_____

Patrick S. Williams, John B. Lunseth, Michael M. Lafeber, and Gerald E. Helget,
Briggs and Morgan, P.A., Counsel for Plaintiff.

Michael E. Husmann, S. Edward Sarskas, J. Donald Best, and Angela J. Kujak,
Michael Best & Friedrich LLP, Counsel for Defendants.

_____

## I.      INTRODUCTION

This matter is before the Court on the Parties' joint request for claim

construction pursuant to <u>Markman v. Westview Instruments, Inc.,</u> 517 U.S. 370

(1996).  Plaintiff is The Toro Company ("Toro").  Defendant Clark Equipment

Company is a subsidiary of Defendant Ingersoll-Rand Company Limited

(collectively, "Bobcat").  The patent at issue is U.S. Patent No. 6,709,223 ("'223

Patent").  Toro is the owner of the '223 Patent.  In the instant lawsuit, Toro alleges

that Bobcat loaders infringe claim 3 of the '223 Patent.

The Court held a <u>Markman</u> hearing on October 10, 2007.

## II.    BACKGROUND

### A.    Factual Background

The Patent and Trademark Office ("PTO") issued the '223 Patent to Toro

on March 23, 2004, covering a "Tracked Compact Utility Loader"—a compact

utility loader capable of being controlled by a walk-behind operator in outdoor

environments.

On July 20, 2006, Toro filed a Complaint in this Court alleging that Bobcat

infringed on the '223 Patent.  It claims that Bobcat's MT50, MT52 and MT55

include all the elements of claim 3 of the '223 Patent.  The accused products

allegedly, therefore, literally infringe Toro's patent.

Claim 3 consists of elements (a)-(h).  Bobcat admits that elements (a)-(f) of

claim 3 are present in the accused products.  However, Bobcat denies that

2

element (g), requiring "at least one actuator extending between the loader arms and the attachment for pivoting the attachment relative to the loader arms," is present on the accused loaders.  With respect to element (h), Bobcat argues that is vague and ambiguous and causes claim 3 to be invalid.

Bobcat counterclaims, seeking a declaratory judgment that the '223 Patent is invalid, that it did not infringe the '223 Patent, and that the '223 Patent is unenforceable.   As one basis for invalidity, Bobcat alleges that Toro committed inequitable conduct before the PTO by failing to disclose relevant prior art.  As a second basis for invalidity, Bobcat alleges that Toro executed a pre-critical date sale of a prototype to a company called New Holland North America, Inc., in violation of 35 U.S.C. § 102(b) (providing that a person is not entitled to a patent if the invention was on sale in the United States "more than one year prior to the date of the application for patent in the United States").  Allegedly, Toro also neglected to disclose the sale to the PTO.

On September 28, 2007, the Court entered an Order barring admission of extrinsic evidence, including expert witnesses, at the <u>Markman</u> hearing.  The <u>Markman</u> hearing was held on October 10, 2007.

B.     **Claim 3 and Terms at Issue**

3

Toro asserts that Bobcat infringes claim 3 of the '223 Patent.  The five disputed terms are "walk-behind loader," "left and right endless drive tracks," "the open space between the loader arms providing substantially unobstructed viewing," "an actuator extending between the loader arms and the attachment," and "comfortably."

The text of the claim at issue is

3. A walk-behind loader, which comprises:

(a) a frame having a front and a rear and a pair of laterally spaced uprights at the rear of the frame;

(b) an internal combustion engine carried on the frame enclosed beneath a hood or shroud;

(c) left and right endless drive tracks carried on the frame for propelling the frame in forward and reverse directions, the drive tracks being powered by the internal combustion engine;

(d) left and right loader arms pivotally connected to upper ends of the left and right uprights, respectively, wherein the loader arms extend forwardly and downwardly from the pivotal connections of the loader arms to the uprights to terminate in front ends that extend over the front of the frame, the loader arms having a lowermost position in which the front ends of the loader arms are generally adjacent the ground with the loader arms capable of being raised into elevated positions in which the front ends of the loader arms are spaced further above the ground than in the lowermost position of the loader arms, and wherein the loader arms are configured with an open space between the loader arms which open space is large

4

enough to permit the loader arms to fit down around and receive therebetween at least an upper portion of the hood or shroud of the internal combustion engine when the loader arms are in their lowermost position, the open space between the loader arms providing substantially unobstructed viewing towards the front in elevated positions of the loader arms when the open space is raised in front of an operator's face;

(e) a ground grooming or working attachment pivotally connected to the front ends of the loader arms;

(f) at least one actuator extending between the loader arms and the frame for pivoting the loader arms upwardly and downwardly relative to the frame about the pivotal connection of the loader arms to the frame;

(g) at least one actuator extending between the loader arms and the attachment for pivoting the attachment relative to the loader arms; and (h) a control system positioned at the rear of the frame and comprising a control handle configured to be gripped and manipulated by a standing operator walking behind the frame during operation of the loader, wherein the control system is located sufficiently close to the rear of the frame and the rear of the frame is configured to permit the standing operator walking behind the frame to comfortably reach and operate the control system with the operator's arms being bent at the elbow.

## III.   DISCUSSION

### A.   Legal Framework

#### 1.   Standard for Claim Construction

Interpretation of the terms used in a patent is a matter of law to be decided

by the Court.  See Markman v. Westview Instruments, Inc., 517 U.S. 370, 391

(1996).  The Markman hearing is held to construe the meaning of claim language

as a matter of law, not to make factual findings.  The Court need only construe

the disputed claim language "to the extent necessary to resolve the controversy."

Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999)

(citation omitted).

"[T]he words of a claim are generally given their ordinary and customary

meaning.  . . .  [T]he ordinary and customary meaning of a claim term is the

meaning that the term would have to a person of ordinary skill in the art in

question at the time of the invention, i.e., as of the effective filing date of the

patent application."  Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir.

2005) (en banc) (citations omitted).  "[T]he person of ordinary skill in the art is

deemed to read the claim term not only in the context of the particular claim in

which the disputed term appears, but in the context of the entire patent,

including the specification."  Id. at 1313.

"In some cases, the ordinary meaning of claim language as understood by

a person of skill in the art may be readily apparent even to lay judges, and claim

construction in such cases involves little more than the application of the widely

accepted meaning of commonly understood words.  In such circumstances,

general purpose dictionaries may be helpful." <u>Id.</u> at 1314 (citation omitted).

However,

> the meaning of a claim term as understood by persons of skill in the
> art is often not immediately apparent, and because patentees
> frequently use terms idiosyncratically, the court looks to those
> sources available to the public that show what a person of skill in the
> art would have understood disputed claim language to mean.  Those
> sources include the words of the claims themselves, the remainder of
> the specification, the prosecution history, and extrinsic evidence
> concerning relevant scientific principles, the meaning of technical
> terms, and the state of the art.

<u>Id.</u> (citations omitted).

## 2.    Intrinsic Evidence of Meaning

"Quite apart from the written description and the prosecution history, the

claims themselves provide substantial guidance as to the meaning of particular

claim terms."  <u>Phillips</u>, 415 F.3d at 1314 (citation omitted).

> Other claims of the patent in question, both asserted and unasserted,
> can also be valuable sources of enlightenment as to the meaning of a
> claim term.  Because claim terms are normally used consistently
> throughout the patent, the usage of a term in one claim can often
> illuminate the meaning of the same term in other claims.

<u>Id.</u> at 1314 (citations omitted).

"[C]laims must be read in view of the specification, of which they are a

part. . . .  [T]he specification is always highly relevant to the claim construction

analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a

disputed term."  Id. at 1315 (citations omitted).

> [T]he specification may reveal a special definition given to a
> claim term by the patentee that differs from the meaning it would
> otherwise possess.  In such cases, the inventor's lexicography
> governs.  In other cases, the specification may reveal an intentional
> disclaimer, or disavowal, of claim scope by the inventor.  In that
> instance as well, the inventor has dictated the correct claim scope,
> and the inventor's intention, as expressed in the specification, is
> regarded as dispositive.

Id. at 1316 (citations omitted).

> [A] court should also consider the patent's prosecution history, if it
> is in evidence.  The prosecution history . . . consists of the complete
> record of the proceedings before the PTO and includes the prior art
> cited during the examination of the patent.  Like the specification,
> the prosecution history provides evidence of how the PTO and the
> inventor understood the patent.  Furthermore, like the specification,
> the prosecution history was created by the patentee in attempting to
> explain and obtain the patent.  Yet because the prosecution history
> represents an ongoing negotiation between the PTO and the
> applicant, rather than the final product of that negotiation, it often
> lacks the clarity of the specification and thus is less useful for claim
> construction purposes.

Id. at 1317 (citations omitted).

### 3.      Admission of Extrinsic Evidence

"Resort to extrinsic evidence is appropriate only when an ambiguity

remains after consulting the intrinsic evidence of record." <u>Storage Tech. Corp. v. Cisco Sys., Inc.</u>, 329 F.3d 823, 832 (Fed. Cir. 2003) (citation omitted).  Also, "[t]he testimony of an inventor and his attorney concerning claim construction is . . . entitled to little or no consideration.  The testimony of an inventor often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application . . ." <u>Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.</u>, 132 F.3d 701, 706 (Fed. Cir. 1997) (citation omitted).  Finally, it is also improper to construe the claims with reference to the accused device.  <u>Neomagic Corp. v. Trident Microsys., Inc.</u>, 287 F.3d 1062, 1074 (Fed. Cir. 2002).

In this case, the Court did not rely upon extrinsic evidence.  <u>See, e.g.</u>, <u>Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.</u>, 450 F.3d 1350, 1357 (Fed. Cir. 2006) (noting that "[t]he decision as to the need for and use of experts is within the sound discretion of the district court" and holding "no abuse of discretion in the court's decision to exclude expert testimony on the issues presented in the <u>Markman</u> hearing").

## B.    Claims To Be Construed

The parties identify five claim limitations that require the Court's interpretation.  As a preliminary matter, Toro argues that Bobcat has identified

three irrelevant claim terms for construction, two of which were also untimely disclosed to Toro.

The Court's Pretrial Scheduling Order provides, in pertinent part: "On or before April 15, 2007, the parties shall simultaneously exchange a list of claim terms, phrases, or clauses which each party contends should be construed by the Court." [Docket No. 20]  The Order also required the parties to conduct a conference on claim construction issues, including a mutual exchange of proposed constructions and the supporting intrinsic or extrinsic evidence, no later than April 29, 2007.

First, Toro notes that, in Bobcat's List of Claim Terms that Should Be Construed by the Court, Bobcat identified element (d)—"open space . . . large enough to permit the loader arms to fit down around and receive therebetween at least an upper portion of the hood or shroud of the internal combustion engine when the loader arms are in the lowermost position"—as requiring construction. Because Bobcat previously admitted that element (d) is present on the accused loaders, Toro argues that this term is not in dispute and that no construction by the Court is required.  The parties have not listed this term in their Joint Claim Construction Statement or presented any proposed interpretation of its language.

10

This limitation is no longer in dispute; therefore, Toro's argument is moot.

Second, Toro complains that Bobcat first identified two claim terms requiring construction on the morning of the claim construction conference ordered by the Court. Toro alleges that on the day of the conference, Bobcat identified (1) the term "left and right endless drive tracks" described in element (c); and (2) the term "substantially unobstructed viewing" described in element (d). Because Bobcat previously admitted that both claim elements (c) and (d) are present on the accused loaders, and because Bobcat failed to identify either of the terms in its pre-conference list of claim terms to be construed by the Court, Toro objects to their inclusion in the Joint Claim Construction Statements.

Bobcat asserts that it was unaware of any dispute regarding the meaning of the two terms until after it deposed Joseph Walto, Toro's lead inventor, four days before the scheduled claim construction conference. When concerns about the meaning of the terms were raised at the deposition, Bobcat claims it identified the potential dispute to Toro's counsel within three business days. Subsequently, the parties exchanged a series of proposed Joint Claim Construction Statements and conferred about the meaning of "endless drive tracks." According to Bobcat, the parties were unable to agree on a construction for the two terms in dispute.

The purpose of the Court's Order is to ensure the parties identify disputed claim terms and meet and confer so that a finalized list of disputed terms can be presented to the Court before the <u>Markman</u> hearing.  The Order did not preclude a party from deviating from its initial list of disputed terms.  In addition, Toro presents no evidence that Bobcat acted in bad faith when it first identified the two terms on the morning of the claim construction conference.  Any prejudice to Toro was cured during subsequent discussions over the contents of the parties' Joint Claim Construction Statement.  Therefore, the disputed terms in the parties' Joint Claim Construction Statement are addressed in their entirety below.

### C.      Disputed Term 1: "Walk-Behind Loader"

The preamble to claim 3 identifies the invention as a "walk-behind loader." Toro proposes that the Court does not need to construe this term because it is clear.  In the alternative, Toro proposes that the Court construe the term "walk-behind loader" as follows: "A loader the operator can walk behind during operation in a manner similar to that of a walk-behind lawn mower, without riding on or being carried by the loader."  Bobcat proposes that the Court construe the term as follows:  "A loader that is configured to permit an operator to reach and operate the loader's control system while in a position walking

behind the loader as at least one position from which an operator can reach and operate the controls."

### 1.   Whether the Preamble Limits the Claim

Bobcat first argues that, because it is part of the preamble, the term "walk-behind loader" is not a claim limitation and does not require construction.  Toro responds that the specification, prosecution history, and the drafter's intention all demonstrate that the term "walk-behind loader" is a claim limitation, essential to confer meaning to the patent claim.

### a.   Standard

"In considering whether a preamble limits a claim, the preamble is analyzed to ascertain whether it states a necessary and defining aspect of the invention, or is simply an introduction to the general field of the claim."  On Demand Mach. Corp. v. Ingram Indus., 442 F.3d 1331, 1343 (Fed. Cir. 2006).  The question is "whether the preamble is necessary to give life, meaning and vitality to the claims or counts."  Id. (citations omitted).  The Federal Circuit has explained:

> While it is true that preamble language is often treated as nonlimiting in nature, it is not unusual for this court to treat preamble language as limiting . . . .  Preamble language that merely

states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim.  However, we have stated that there is no 'litmus test' for determining whether preamble language is limiting.  To the contrary, we have stated that whether to treat a preamble as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent.

If the body of the claim sets out the complete invention, the preamble is not ordinarily treated as limiting the scope of the claim.  However, the preamble is regarded as limiting if it recites essential structure that is important to the invention or necessary to give meaning to the claim.  That is, if the claim drafter chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects.  Moreover, when the limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention.

Bicon, Inc. v. Straumann Co., 441 F.3d 945, 952 (Fed. Cir. 2006) (citations omitted).

Moreover, clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention. Without such reliance, however, a preamble generally is not limiting when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention.  Thus, preamble language merely extolling benefits or features of the claimed invention does not limit the claim scope without clear reliance on those benefits or features as patentably significant.

Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808-09 (Fed. Cir.

2002) (citations omitted).

## b.    Analysis

Bobcat asserts that claim 3 defines a structurally complete machine and the preamble term "walk-behind loader" does not provide antecedent basis for any term in the body of the claim.  Instead, Bobcat claims that the preamble merely states a purpose or intended use for the invention.

Toro cites several references to the "walk-behind" feature of the invention in the specification and the prosecution history.  ('223 Patent, Col. 1, ll. 7-9; id., Col. 1, ll. 66-67; id., Col. 2, ll. 35-39; id., Col. 4, ll. 26-29; id., Col. 5, ll. 58-61; '223 Patent, File History, T000260-61, Ex. L to Lafeber Decl.)  The evidence shows that Toro cited and relied upon the "walk-behind" feature to distinguish the invention over prior art.

Claim 10 of the '223 Patent's parent application was the predecessor to current claim 3.  (See U.S. Patent App. Serial No. 09/560,308, Ex. M to Lafeber Decl.)  Claim 10 was initially rejected by the examiner as being anticipated by U.S. Patent No. 359,497 ("Rayner Patent").  (Sept. 18, 2001 Office Action, Parent U.S. Patent App. Serial No. 09/560,308, T000376, Ex. M to Lafeber Decl.)  To overcome this rejection, the inventor distinguished the subject invention on the

grounds that "[t]he patent to Rayner does not show a loader which the operator

can easily walk behind.  (Feb. 19, 2002 Response to Office Action, T000386, Ex. M

to Lafeber Decl.)  During prosecution of the '223 Patent, the same issue was

raised and the same argument was made to distinguish the Rayner Patent.  (Aug.

21, 2003 Response to Office Action, T000261, Ex. L to Lafeber Decl. ("As pointed

out in the parent application, Rayner is not directed to a tracked loader or a

loader in which the operator walks behind the loader.  Clearly, Rayner is a ride

on loader.").)

        Bobcat argues that Toro could not have relied on the walk-behind loader

distinction during prosecution to distinguish the Rayner Patent, because the PTO

viewed the Rayner Patent as encompassing a loader that a tall operator could

operate while walking behind the invention.  This statement by the PTO was

made during the prosecution of the '850 Patent, which is a continuation-in-part of

the '223 Patent.  (See U.S. Patent App. Serial No. 10/804,850, filed Mar. 19, 2004,

Ex. H, N to Kujak Decl.)  A patent's prosecution history consists of the "entire

record of the proceedings in the Patent Office from the first application papers to

the issued patent."  Autogiro Co. of Am. v. United States, 384 F.2d 391, 398 (Ct.

Cl. 1967).  Therefore, this portion of the prosecution history of the '850 Patent,

16

generated in 2006, is extrinsic to the '223 Patent, issued on March 23, 2004.  The

statement in question was made by the PTO after Toro used the disputed term to

distinguish its patent from the Rayner Patent; nothing prevented Toro from

relying on the term "walk-behind loader" during the prosecution of its '223

Patent.

The Federal Circuit's general rule that the preamble is not limiting does not

apply here.  Toro relied on the walk-behind distinction during prosecution to

distinguish prior art and the preamble is necessary to give meaning to claim 3.

See In re Cruciferous Sprout Litig., 301 F.3d 1343, 1347-48 (Fed. Cir. 2002)

(holding the preamble term "rich in glucosinolates" was limiting, because the

patentee relied on the preamble to distinguish the prior art in prosecution).  The

term "walk-behind loader" is a claim limitation and, thus, requires construction

by the Court.

### 2.   Proper Construction of the Term "Walk-Behind Loader"

Toro claims that language of the specification supports its interpretation of

"walk-behind loader."  The patentee defined the walk-behind feature as follows:

"As is clearly illustrated in Fig. 1, the operator is not carried by and does not ride

on loader 2 itself.  Instead, the operator walks behind loader 2 during operation

in a manner similar to that of a walk-behind lawn mower." ('223 Patent, Col. 4, ll. 26-29.)

Bobcat argues that Toro's construction is ambiguous and does not resolve the issue of whether walking behind is the only mode of operation. Bobcat argues that the specification explicitly states that the loader is not limited to this mode of operation. Bobcat notes the following statement: "Alternatively, if so desired, the operator could be carried on loader 2 in a seated or standing position." ('223 Patent, Col. 4, ll. 39-40.) Bobcat is correct that other forms of operation are clearly contemplated in the specification.

Bobcat also points to the rejection of claim 3 as anticipated by the Rayner Patent. Toro responded to the PTO's rejection by arguing that the operator only rides on the Rayner loader, in order to distinguish it from Toro's invention. Toro also argued that the Rayner Patent would not anticipate claim 3 even if Rayner were configured to allow the operator to walk behind the loader. (T000261, Ex. L to Lafeber Decl.) According to Bobcat, this argument clarifies that Toro understood that operating the loader while walking behind it was not the exclusive method of operation for its invention.

### 3.    Conclusion

18

Bobcat and Toro agree that claim 3 is not limited to embodiments for which the sole mode of operation is to walk behind the device.  Both proposed constructions allow for the possibility of other embodiments.  However, the Court will adopt Toro's construction.  Toro's construction is derived from the language in the specification and clearly and simply explains the concept of the term at issue.  Despite Bobcat's protests, Toro's construction does not improperly limit the term to a loader that the operator **must** walk behind to operate. Therefore, the Court concludes that the correct interpretation of the term "walk-behind loader" is

> A loader the operator can walk behind during operation in a manner similar to that of a walk-behind lawn mower, without riding on or being carried by the loader.

**D.      Disputed Term 2: "Endless Drive Tracks"**

**1.      Introduction**

Element (c) of claim 3 designates "left and right endless drive tracks" as a limiting feature of the claimed invention.  Element (c) states: "left and right endless drive tracks carried on the frame for propelling the frame in forward and reverse directions, the drive tracks being powered by the internal combustion engine."  Toro asserts that no construction is required for this term.  Bobcat

19

asserts that the correct construction is that "Tracks are at least one method of propelling the loader, but does not exclude the presence of other modes of propulsion such as wheels.  The endless tracks need not meet any durability standard."

Bobcat identifies two main issues concerning the claim term "left and right endless drive tracks."  First, Bobcat questions whether this claim term means that the loader has dedicated tracks—that is, that tracks are the only method for propelling the loader frame in forward and reverse directions.  Second, Bobcat questions whether the tracks referred to are "durable" tracks.  If the phrase "left and right endless drive tracks" means that the tracks are "durable," Bobcat asserts that the term durable is ambiguous and incapable of interpretation as a claim limitation.

Toro proposes no construction of its own.  Instead, Toro argues that Bobcat's justifications for identification of this issue lack merit.  According to Toro, Bobcat gives two reasons why construction is necessary: (1) to establish this limitation's presence on prior art "rubber over tire tracks" machines; and (2) due to Toro's contention that its experimental use and testing included testing durability for use in outdoor, relatively hostile, debris-laden environments.  In

regard to the first justification, Toro argues that the prior art statement admits

that such element is present on the subject "rubber over tire tracks" prior art.

(Toro Prior Art Statement, Ex. I of Lafeber Decl.)  In regard to the second

justification, Toro asserts that it only made the durability claim in response to

Bobcat's contention that the use and testing of prototypes gave rise to an on-sale

bar under 35 U.S.C. § 102(b).  See EZ Dock v. Shafer Sys., Inc., 276 F.3d 1347, 1351

(Fed. Cir. 2002) (stating the on-sale bar applies when the claimed invention is the

subject of a commercial sale and ready for patenting prior to the critical date).

"[E]vidence that the public use or sale of the patented device was primarily

experimental may negate an assertion of invalidity."  Monon Corp. v. Stoughton

Trailers, Inc., 239 F.3d 1253, 1258 (Fed. Cir. 2001) (citation omitted).  Toro argues

that durability experimentation does not constitute a commercial sale, and testing

of features inherent to the claimed invention does not create claim limitations

requiring construction by the Court.

## 2. Dedicated Tracks

First, Bobcat notes that claim 3 recites a walk-behind loader that

"comprises  . . . left and right endless tracks carried on the frame for propelling

the frame in forward and reverse directions."  Because the word "comprise" in a

patent claim "means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim," Genentech, Inc. v. Chiron Corp., 112 F.3d 495, 501 (Fed. Cir. 1997), Bobcat claims that endless tracks are not limited to dedicated tracks.  In addition, Bobcat cites the following language from the specification:  "Various modifications of this invention will be apparent to those skilled in the art.  For example, control system 24 is effective for controlling traction systems 27 having independent left and right drive motors regardless of whether the ground engaging, traction members comprise tracks 28 or wheels."  ('223 Patent, Col. 12, ll.47-52.)  Thus, Bobcat argues that the specification itself expressly indicates that the inventors contemplated a method of propulsion other than by the endless tracks, such as wheels.

Bobcat also cites evidence from the prosecution history to support its construction.  Both the parent and continuation applications included a claim dependent on claim 3, which recited: "The walk behind loader of claim [3], wherein the traction system comprises left and right endless drive tracks carried on the frame."  (T000335, Ex. J to Kujak Decl.; T000221, Ex. K to Kujak Decl.) Although the dependent claim was eventually incorporated into claim 3, Bobcat

argues that Toro did not modify the dependent claim to make tracks the exclusive mode of propelling the loader.  (T00256-263, Ex. K to Kujak Decl.)

Finally, Bobcat offers deposition testimony from Walto, who agreed that a loader with non-dedicated tracks has "left and right endless tracks" as that term is used in claim 3 of the '223 patent.

Toro does not dispute that "left and right endless tracks" are present on the "rubber over tire tracks" prior art.  Toro argues, rather, that Bobcat's construction is an attempt to encompass loaders that use wheels alone for propulsion within the meaning of the claim term.  Toro is correct that such an interpretation is without merit, because it would render the term "tracks" meaningless.  See Merck & Co., Inc. v. Teva Pharm. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.") (citations omitted).

Toro also argues that there is no support in the intrinsic evidence for including "wheels" in the definition of endless drive tracks.

The construction of this term must clarify that the invention contemplates "rubber over tire tracks," but does not contemplate wheel-only loaders.  The Court concludes that Bobcat's proposed construction that "tracks are at least one

23

method of propelling the loader, but does not exclude the presence of other modes of propulsion, such as wheels," communicates this concept.  The Court concludes that this proposed construction would not mislead the jury into thinking that use of either tracks or wheels (without tracks) are encompassed by the invention, because it clearly indicates that the tracks are, at a minimum, present as a method of propelling the loader but that it is possible that additional modes of propulsion could also be included.

### 3.   Durability

The durability issue arises because Bobcat raises an on-sale bar defense. Toro contends that it was merely conducting testing and experimentation of certain prototypes, including durability testing related to the invention's drive tracks.

Testing features inherent to the claimed invention, including durability in the product's natural environment, does not constitute a commercial sale.  EZ Dock, 276 F.3d at 1353.  Therefore, in order to support its future on-bar sale argument, Bobcat seeks to have the Court hold that the endless drive tracks do not need to meet any durability standard.

Bobcat argues that there is nothing in the intrinsic evidence to support a

24

claim that the term "left and right endless drive tracks" implies a durability

requirement and asks, in its claim construction brief, that the Court construe the

claim term with corresponding language.

Toro argues that "durability" is an inherent feature of the claimed

invention and, therefore, is not a claim limitation requiring construction by the

Court.  Toro cites multiple cases in which courts examined the issue of durability

in connection with the on-sale bar defense, not as part of claim construction.  See,

e.g., EZ Dock v. Schafer Sys., Inc., 276 F.3d 1347, 1353-54 (Fed. Cir. 2002);

Seal-Flex, Inc. v. Athletic Track & Court Constr., 98 F.3d 1318, 1322-24 (Fed. Cir.

1996).

The issue of whether testing related to the features inherent to the claimed

invention, including durability, is a question to be addressed on the full record,

not as part of a Markman hearing.  It is not an appropriate inquiry for claim

construction.  Therefore, although the Court adopts the first sentence of Bobcat's

proposed construction of "endless drive tracks," it will not include the  final

sentence regarding durability.

### 4.      Conclusion

Therefore, the Court concludes that the correct interpretation of the term

"endless drive tracks" is that

> Tracks are at least one method of propelling the loader but does not exclude the presence of other modes of propulsion, such as wheels.

## E.    Disputed Term 3: "Providing Substantially Unobstructed Viewing"

The parties disagree about the meaning of claim 3's requirement, in element (d), of "the open space between the loader arms providing substantially unobstructed viewing towards the front in elevated positions of the loader arms when the open space is raised in front of an operator's face." They do agree that the term "open space between the loader arms" is clear, so the dispute focuses on the meaning of the term "substantially unobstructed viewing." Toro proposes that the Court find that the language is unambiguous and no construction is needed or, in the alternative adopt the following construction: "providing the operator with good sight lines to view the front of the loader when the loader arms are in an elevated position and the open space is raised in front of an operator's face." Bobcat proposes the following construction: "providing a view that is either entirely unobstructed or largely but not wholly unobstructed."

Toro argues that its proposed construction requiring good sight lines is bolstered by the specification and prosecution history. The specification states:

> Another problem with the Rohrbaugh loader is the use of an
> extensible and retractable boom to mount the ground engaging
> attachment.  This boom is so large and is so positioned on the loader
> that it substantially obstructs the view of the operator if the operator
> is attempting to work the ground immediately in advance of the
> loader.  The operator simply cannot see what he is doing with
> attachment when using the Rohrbaugh loader.  . . .  Thus, there is
> also a need in the art for a tracked, walk-behind loader that provides
> the operator with **<u>good sight lines</u>** to the attachment secured to the
> loader and which is as simple and durable as possible.

('223 Patent, Col. 1, ll. 55– Col. 2, ll. 1-2 (emphasis added).)  To distinguish the

invention from another loader, Toro made a similar argument: "When the

[Maximan] loader arms are pivoted upwardly, the connecting panel would block

the operator's view to the front."  (Aug. 21, 2003 Response to Office Action, '223

Patent, File History, T000261, Ex. L to Lafeber Decl.)

Bobcat responds that Toro's construction should be rejected, because the

modifier "good" is an indefinite and subjective term that is incapable of further

definition.  The intrinsic evidence is devoid of an objective standard for

determining the meaning of the phrase "good sight lines."  Bobcat argues that

such a construction would be interpreted differently by those of skill in the art, as

they attempted to guess how "good" is enough to satisfy the claim limitation.

<u>See</u> 35 U.S.C. § 112 (requiring that patent claims be definite); <u>Datamize, LLC v.</u>

27

Plumtree Software, Inc., 417 F.3d 1342, 1350 (Fed. Cir. 2005) ("The scope of claim

language cannot depend solely on the unrestrained, subjective opinion of a

particular individual purportedly practicing the invention.") (citation omitted).

In addition, Bobcat argues that such ambiguity would prevent the public, and

Toro's competitors, from ascertaining the scope of the claim and the subject

matter of the patent.

Bobcat relies on the ordinary sense of the term "substantially" for its

construction, that is, "being largely but not wholly that which is specified."  This

definition is found in the dictionary.  Merriam Webster's Collegiate Dictionary

1174 (10th ed. 1995).  Additionally, the Federal Circuit has previously applied

such a definition to the word "substantially" on at least two other occasions.  See

LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc., 275 F.3d 1347, 1354-55 (Fed.

Cir. 2001) (construing term "substantially completely wetted" to mean "[l]argely,

but not necessarily wholly, surrounded by resin"); Ecolab, Inc., v. Envirochem,

Inc., 264 F.3d 1358, 1369 (Fed. Cir. 2001) (construing term "substantially uniform"

to mean "largely, but not wholly the same in form").

The Court concludes that, based on the evidence currently before the

Court, the term "good" in "good sight lines" is overly vague.  Bobcat's proposed

construction conforms to the ordinary meaning of the term "substantially" and

has been previously adopted by the Federal Circuit at least twice.  It fits within

the context of the '223 Patent.  Therefore, the Court adopts Bobcat's construction.

The Court concludes that the correct interpretation of the term "providing

substantially unobstructed viewing" is

> Providing a view that is either entirely unobstructed or largely but
> not wholly unobstructed.

**F.      Disputed Claim 4: "Actuator Extending Between the Loader Arms"**

**1.      Parties' Proposed Constructions**

Element (g) of claim 3 requires "at least one actuator extending between

the loader arms and the attachment for pivoting the attachment relative to the

loader arms."  Toro proposes that no construction of this term is necessary or, in

the alternative, that the correct interpretation of this term is "at least one

mechanical device for moving or controlling something connecting directly or

indirectly the loader arms and the attachment for pivoting the attachment

relative to the loader arms."

Bobcat asserts that the correct interpretation of the term is "at least one

actuator stretching or reaching between the loader arms and the attachment for

pivoting the attachment relative to the loader arms without any intervening structures."

### 2. Definition of "Actuator"

Element (g) has two components at issue. First, it requires the presence of an "actuator" that pivots the attachment. Second, the actuator relates to the loader arms and the attachment by "extending between" the two structures. In the Joint Claim Construction Statement, Toro and Bobcat offer similar definitions of the term "actuator." According to Toro, an actuator is "a mechanical device for moving or controlling something." Bobcat does not dispute that Toro's definition is accurate, but asserts that simply leaving the word "actuator" in the definition is less confusing. The Court concludes that Toro's accurate definition of "actuator" is not confusing and will adopt it.

It is the construction of the phrase "extending between" that lies at the heart of the parties' dispute over this limitation.

### 3. Dictionary Definition

Bobcat contends that its proposed construction of "extending between" is derived from the ordinary meaning of the claim language. In fact, the parties agree that the word "extend" is a non-technical term and means "to stretch out in

distance, space, or time." See Merriam-Webster's Collegiate Dictionary 411 (10th

ed. 1995). The parties differ, however, regarding whether the meaning precludes

the existence of an intervening structure, such as a cross member.

Bobcat also asserts that the plain and ordinary meanings of the terms

"extending" and "connecting" are different. To "connect" is "to join or fasten

together usually by something intervening." Merriam-Webster's Collegiate

Dictionary 244 (10th ed. 1993). In contrast, to "extend" is "to stretch out in

distance, space or time." Id. 411. However, the ordinary definition of "extend"

does not address one way or the other the question of whether intervening

structure is permitted.

### 4. Two Actuators Required in Claim 3

Claim 3 requires two actuators – the loader arm actuator, found in element

(f), and the attachment actuator, found in element (g). ('223 Patent, Col. 14, ll. 26-

32.) The loader arm actuator extends "between the loader arms and the frame,"

while the attachment actuator extends "between the loader arms and the

attachment."

### 5. Loader Arm Actuator in Figure 1

Bobcat argues that the proper construction of this claim term requires there

31

to be an actuator directly extending between the loader arms and the attachment, with no "intervening structures" between them.  Bobcat notes that the description of the preferred embodiment depicted in Figure 1 of the '223 Patent describes two claimed actuators: one to pivot the loader arms (limitation 3(f)) and one to pivot the ground grooming or working attachment (limitation 3(g)).  ('223 Patent, Col. 2, ll. 29-35.)  According to Bobcat, the loader arm actuator reaches or stretches between the frame and the loader arms, occupying the space between those two structures without any intervening structures.  Bobcat claims that the depiction of the loader arm actuator, from claim limitation 3(f) in Figure 1 supports it proposed construction of "extending between."

Figure 1 reveals that the loader arm actuator is connected to the loader arm by a plate and pin assembly that is welded to the loader arm.  Bobcat baldly asserts that the plate and pin assembly is part of the loader arm and the cross-member, in Figure 1, is not part of the loader arm.  However,  the Court finds no reason to adopt this conclusion.  Because the plate and pin assembly is an "intervening structure," similar to the crossbar that connects the actuator with the loader, the Court rejects Bobcat's proposed construction.  Moreover, element (f) is not at issue here; the relevant element is element (g).  Figure 1 depicts the

limitation 3(g) as an actuator extending between the loader arms and the

attachment via a cross-member spanning the loader arms.

### 6.    Attachment Actuator in Figure 1

Bobcat further argues that description of the attachment actuator in Figure

1 is a "second embodiment" of claim limitation 3(g), which shows the utilization

of a cross-member to connect the attachment actuator with the loader arms.

Bobcat locates two distinct embodiments in the '223 patent's specification.  First,

in Column 2, at lines 34-36, the specification describes: "At least one actuator

extends between the loader arms and the attachment for pivoting the attachment

relative to the loader arms."  Later, in Column 4, at lines 6-9, the specification

states: "A hydraulic tilt cylinder 18 extends between attachment 16 and a

cross-member 19 extending between the loader arms 12 to vary the angle of

inclination of attachment 16 relative to loader arms 12."  Thus, Bobcat claims that

its proposed construction is correct and includes at least one embodiment of the

invention described in the patent's specification.  Bobcat acknowledges that,

generally, a claim construction must "encompass at least one disclosed

embodiment."  Johns Hopkins Univ. v. Cellpro, Inc., 152 F.3d 1342, 1355 (Fed.

Cir. 1998) (citation omitted).  However, it claims that its proposed construction

does include at least one embodiment described in the specification.

The Court concludes that the '223 Patent contains only one preferred embodiment.  One of the alleged embodiments is in column 2, at lines 34-36 of the specification, which describes the attachment actuator with essentially the same language used in claim 3(g).  This language appears in the section of the patent entitled "Summary of the Invention."  The other alleged embodiment (Col. 4, ll. 6-9) is merely a more detailed description of the attachment actuator.  Additionally, this different claim element still depicts "intervening structure."  The sole preferred embodiment depicted in Figure 1 in the patent shows an actuator that stretches or reaches between the loader arms and the attachment, with an intervening crossbar.

Courts "normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification."  Oatey Co. v. IPS Corp., 514 F.3d 1271, 1276 (Fed. Cir. 2008) (citations omitted).  In this case, Bobcat's proposed construction would exclude the sole preferred embodiment depicted in the specification, a result which the Federal Circuit has held "is rarely, if ever, correct."  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996).

### 7.      Claim Differentiation

34

Bobcat also contends that Toro's inclusion of the word "connecting" in its proposed definition renders dependent claim 7 meaningless.  Dependent claim 7 states:

> The walk-behind loader of claim 3, wherein the at least one actuator extending between the loader arms and the frame is pivotally connected at one end to one of the uprights and at an opposite end to one of the loader arms.

('223 Patent, Col. 14, ll. 53-56).  Therefore, claim 7 requires the presence of a loader arm actuator that not only extends between the loader arms and the frame, but also is "connected" to the frame and the loader arms.  If Toro intended the words "extending" and "connecting" to be interchangeable, Bobcat argues, dependent claim 7 would be meaningless.  Bobcat also asserts that the narrower claim language in Toro's pending continuation-in-part application demonstrates that claim 3 of the '223 Patent does not cover an embodiment using a cross member.

The Court rejects Bobcat's argument.  "That, under the doctrine of claim differentiation, limitations of one claim are not read into unlimited claims does not conversely mean that those limitations are read *out of* those unlimited claims.  Cf. Tandon Corp. v. U.S. Intern. Trade Com'n, 831 F.2d 1017, 1021-24 (Fed. Cir.

1987) (where claims 1 and 12 described a 'first transducer' and claim 5 a 'first non-gimballed transducer,' Commission, in finding no infringement, correctly rejected plaintiff's argument that 'first transducer' in claims 1 and 12 had to be gimballed)." <u>Gen. Elec. Co. v. Hoechst Celanese Corp.</u>, 698 F. Supp. 1181, 1185 (D. Del. 1988).

### 8.      Definiteness of Term "Directly or Indirectly"

Bobcat also argues that Toro's proposed construction eliminates a limitation because, no matter where the actuator is located on the loader, it is "directly or indirectly" connected to both the attachment and the loader arms. Bobcat concludes that all components of the loader are connected "directly or indirectly" to all other components.

Bobcat rejects Toro's use of the phrase "directly or indirectly" as an improper claim interpretation, citing <u>Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.</u>, 93 F.3d 1572 (Fed. Cir. 1996).  In <u>Ethicon</u>, the Federal Circuit held that the term "connected to" should not "be read broadly to include two distant elements which are 'connected' by intervening elements" and could not "include elements which are connected directly or indirectly." <u>Id.</u> at 1578.   However, <u>Ethicon</u> does not apply in this case.  In <u>Ethicon</u>, the court "acknowledge[d] that

the term 'connected to' could, in other contexts, be broadly construed." Id.

However, it noted that in the case before it, the broad definition sought to include

two "distant elements" connected only by way of multiple intervening structures;

and there was no support in the intrinsic evidence for such an interpretation.  Id.

In the particular invention at issue, the term "connected to" joined a restraining

member with longitudinal slots, so that it would only make sense for the two

items to be related so that the restraining member locked the longitudinal slots.

Subsequent district courts have declined to apply Ethicon's ruling where the

intrinsic evidence supports a "direct or indirect" connection.  See, e.g.,

Sulfur-Tech Water Sys., Inc. v. Kohlenberg, 162 F. Supp. 2d 743, 747 (N.D. Ohio

2001) ("Although 'connected to' in Ethicon was interpreted to mean proximate, or

in direct contact with, the court made clear that the phrase 'connected to' did not

always convey such a limited meaning.  . . .  This is such a case."); Silicon

Graphics, Inc. v. n Vidia Corp., 58 F. Supp. 2d 331, 346 (D. Del. 1999) (interpreting

"coupled" to mean "directly or indirectly connected" partially because preferred

embodiment revealed intervening structure).

　　　　In this case, Toro's definition seeks to include close and integral

components that are in close proximity.  In addition, Bobcat's proposed

interpretation is inconsistent with the only preferred embodiment depicted in the patent and should not be adopted.

### 9.   Conclusion

Bobcat's proposed interpretation excludes the sole preferred embodiment depicted in the specification and cannot be used to construe the disputed claim term.  In addition, the commonly understood meaning of the phrase "extending between" neither requires nor precludes the existence of any intervening structure, and Bobcat has presented no evidence of such dictionary definition. Here, Toro's definition does not seek to include two distant elements connected by multiple structures.  The definition is logical and clear in light of the intrinsic evidence and the invention disclosed.  Therefore, the Court adopts Toro's proposed construction.

The Court concludes that the correct interpretation of the phrase "at least one actuator extending between the loader arms and the attachment for pivoting the attachment relative to the loader arms" is

> At least one mechanical device for moving or controlling something connecting directly or indirectly the loader arms and the attachment for pivoting the attachment relative to the loader arms.

### G.   Disputed Term 5: "Comfortably"

Element (h) of claim 3 requires:

> (h) a control system positioned at the rear of the frame and comprising a control handle configured to be gripped and manipulated by a standing operator walking behind the frame during operation of the loader, wherein the control system is located sufficiently close to the rear of the frame and the rear of the frame is configured to permit the standing operator walking behind the frame to ***comfortably*** reach and operate the control system with the operator's arms being bent at the elbow.

(emphasis added.)  The parties disagree on whether the term "comfortably" is capable of construction as a patent claim limitation.

Toro asserts that the term is clear and no further construction is required. Bobcat asserts that the term "comfortably" is indefinite and incapable of construction.  Bobcat argues that the term is indefinite because it is inherently subjective and fails adequately to notify the public of the scope of claim 3.

The claims of a patent define the scope of the invention.  The second paragraph of 35 U.S.C. § 112 requires that claims particularly point out and distinctly claim the subject matter of the invention.  "[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude."  <u>Datamize, LLC v. Plumtree Software, Inc.</u>, 417 F.3d 1342, 1347

(Fed. Cir. 2005) (citation omitted).  "The definiteness requirement, however, does not compel absolute clarity.  Only claims not amenable to construction or insolubly ambiguous are indefinite."  Id. (citations omitted).  "[C]lose questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee."  Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1380 (Fed. Cir. 2001).

Bobcat also relies on extrinsic evidence—the deposition testimony Walto—to make its case for indefiniteness.  However, "testimony of an inventor and his attorney concerning claim construction is . . . entitled to little or no consideration."  Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys., 132 F.3d 701, 704 (Fed. Cir. 1997).

Here, the claim language in element (h), the specification, and the prosecution history explain how the comfort is achieved—by allowing the operator's arms to remain "bent at the elbow" during operation.  The Court concludes that the term "comfortably" is clear and definite within the context of claim element (h) and requires no construction by the Court.  Cf. Smartdisk Corp. v. Archos, S.A., Civil Action No. 2-05-CV-101 (TJW), 2006 WL 3448645, at *7 (E.D. Tex. Nov. 28, 2006) (holding that the phrase "housing which can be comfortably

40

held in a user's palm . . . as written and in the context of the whole patent, can be

understood by one of ordinary skill in the art" and was not indefinite, so no

construction was required).

In this case, the surrounding claim language describes the benefit of

positioning the control system to allow a walking operator to keep his arms bent

at the elbows, preventing discomfort, stress, or tension.  The prosecution history

further supports a finding that the term is not indefinite.  The original draft of

element (h) did not require that the control system be positioned to allow

operation with arms "bent at the elbow" in a "comfortable" manner.  The

patentee added these terms to overcome obviousness and anticipation rejections

in light of the Rayner Patent.  (Parent U.S. Patent App. Serial No. 09/560,308,

Amended Original Claim 10(h), T000389-T000390, Ex. M to Lafeber Decl.)  To

support this change and distinguish the Rayner Patent, the patentee explained:

"An operator walking behind the Rayner loader could reach the controls, if at all,

only by extending his arms straight out from his shoulders in an attempt to

stretch and reach the controls.  This would be cumbersome and tiring."  (Id. at

T000386.)

The term "comfortably" requires no construction, and the Court rejects

41

Bobcat's indefiniteness argument.

For the reasons stated, **IT IS HEREBY ORDERED**:

The claim of the patent at issue in this case should be construed in a manner consistent with the definitions set forth by the Court in this Memorandum of Law & Order.


Dated:   April 20, 2008                          s / Michael J. Davis
                                                 Judge Michael J. Davis
                                                 United States District Court